UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
THOMAS SMITH,                           )
                                        )
       Petitioner,              )
                                        )
              v.               )        Civil Action No. 11-10362-FDS
                                        )
KELLY RYAN,                             )
                                        )
       Respondent.             )
_____)

REPORT AND RECOMMENDATION ON PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS

December 12, 2012

SOROKIN, C.M.J.

Pending is the Petitioner Thomas Smith's Petition for Writ of Habeas Corpus. Smith's briefing does not indicate in what respect he alleges that the state court's decision was contrary, to or an unreasonable application of, controlling Supreme Court precedent. His pro se memorandum in support of his Petition contains a summary of the case's procedural history, but does not make any substantive argument with respect to any of the claims advanced in his Petition. Nonetheless, I have proceeded to analyze each of his claims based on the record before the Court. For the following reasons, I RECOMMEND that the Petition be DENIED.

I.     PROCEDURAL BACKGROUND

On October 16, 2006, after a jury trial before Bristol Superior Court Judge Richard T. Moses, Smith was convicted of: (1) first-degree murder, in violation of M.G.L. c. 265, § 1;

1

(2) carrying a firearm without a license, in violation of M.G.L. c. 269, § 10(a); and

(3) discharging a firearm within five hundred feet of a building, in violation of M.G.L. c. 269, § 12E.  Docket # 8 (S.A.) at 7.  Smith was sentenced to a term of life in prison on the murder conviction.  Id.  He received a concurrent term of four-to-five years on the unlicensed firearm charge and the firearm discharge conviction was filed.  S.A. at 7-8.

On February 1, 2008, Smith made a motion for a new trial, which was denied on November 18, 2008.  S.A. at 9.  He filed a notice of appeal on December 8, 2008.  Id.  On April 9, 2010, the Supreme Judicial Court affirmed Smith's conviction and the denial of his motion for a new trial.  S.A. at 199-210; Commonwealth v. Smith, 456 Mass. 476 (2010).

On March 3, 2011, Thomas Smith, acting pro se, petitioned for a writ of habeas corpus pursuant to 28 U.S.C., § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Docket #1.  On December 21, 2011, the Respondent filed her Motion to Dismiss on the grounds that the Petition contained both exhausted and unexhausted claims. Docket # 16.  On February 16, 2012, the Court allowed Smith's motion to amend his Petition to dismiss the unexhausted claims.  Docket # 23.  The Court further directed Smith to file a memorandum in support of the seven exhausted claims identified in the Report and Recommendation (See Docket # 20 at 8-9) concerning the Respondent's motion to dismiss.  Id. Smith filed his memorandum on February 23 (Docket # 24) and briefing was completed by April 20, 2012.

II.     FACTUAL BACKGROUND

The recitation of facts made by the Massachusetts Supreme Judicial Court (SJC) is entitled to a presumption of correctness on habeas review. 28 U.S.C. § 2254(e)(1). The SJC

found as follows:

> During the early morning of January 13, 2005, Arthur Simpson was shot in the DeWert housing project in Taunton. He ran to a nearby house seeking aid, collapsed on the stairs leading to the house, and died shortly thereafter. The cause of death was a single gunshot wound. The Commonwealth presented its case primarily through the testimony of two eyewitnesses to the shooting, Francisco Barros and Michael DeJesus. Testifying under a grant of immunity, each of these men stated that he saw [Smith] shoot the victim.
> Smith, 456 Mass. 477-78.

III.  DISCUSSION

The properly-exhausted claims in Smith's Petition (as amended by his dismissal of the unexhausted claims) are: (1) that he was deprived of his right to testify on his own behalf; (2) that the jury instructions were improper with regard to an instruction on malice; and, (3) that his trial counsel was ineffective in the totality of his efforts, and in particular by: (4) failing to call two witnesses; (5) failing to cross one witness; (6) failing to develop a mistaken identity defense; and (7) failing to object when the prosecutor elicited from a witness portions of Smith's statements to police.  See Docket # 20 at 8-9; Docket # 22; Docket # 23.

      Habeas Corpus Standard of Review

Smith cannot obtain federal habeas relief pursuant to 28 U.S.C. § 2254(d)(1) unless he can show that the Massachusetts courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  A legal principle is "clearly established" within the meaning of this provision only when it is embodied in a holding of the United States Supreme Court. Thaler v. Haynes, --- S.Ct. ----, 130 S.Ct. 1171, 1173 (2010) (citing Carey v. Musladin, 549 U.S. 70, 74 (2006); Williams v. Taylor, 529 U.S. 362, 412 (2000)).  The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Taylor, 529 U.S. at

405, or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result," Id. at 406. The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Moreover, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

### Right to Testify Claim

In his Petition, Smith alleged that he was "deprived of my right to testify in my own defense." Docket # 1 at 2.

In support of his motion for a new trial, Smith submitted an affidavit in which he affirmed that he would have testified if had been given that opportunity, but that his trial attorney did not consult him on the matter. See Smith, 456 Mass at 481; S.A. at 53-55, 99. He further affirmed that he would have testified if his trial attorney had consulted him or if the trial judge had conducted a colloquy. Id.

The SJC determined that the claims in Smith's affidavit were not supported by the record and that his waiver of his right to testify was knowing. Smith, 456 Mass at 481. The SJC noted that Smith was present in the courtroom when the trial judge asked Smith's trial attorney whether he had had "an adequate opportunity to discuss with [Smith] the issue of his testimony in this case." Id. The judge repeated the question and trial counsel replied, "Yes. Oh, yes. We've been over that a number of times." Id. The SJC found that the trial judge was entitled to

rely on Smith's trial counsel's representations (made in Smith's presence, and to which Smith did not object). Id. (citing Commonwealth v. Glacken, 451 Mass. 163, 170 (2008)). Moreover, the SJC noted that Smith was also present in the courtroom when the trial judge discussed with Smith's attorney whether or not he would request a jury instruction concerning Smith's decision not to testify. Id. Finally, the SJC found that the trial judge was not required to conduct a colloquy with Smith under the circumstances. Id. (citing Glacken, 451 Mass at 163).

A defendant has a "fundamental constitutional" right to testify in his own defense. Owens v. United States, 483 F.3d 48, 58 (1st Cir.2007) (citing Rock v. Arkansas, 483 U.S. 44, 51-53 (1987)). The right to testify may not be waived by counsel acting alone. Id. (citing United States v. Mullins, 315 F.3d 449, 454 (5th Cir.2002)). "A lawyer plays the primary role in advising his client of the right to testify; a trial judge is not required to apprise a defendant of his right to testify or inquire whether he has waived it." Owens, 483 F.3d at 58 (citing Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir.1987)). Thus, the SJC's conclusions were not contrary, to or an unreasonable application of, controlling Supreme Court precedent and were not clearly erroneous as a matter of fact with respect to the judge's discussion with counsel.

**Improper Jury Instruction Claim**

In his Petition, Smith asserted that, "the instruction that malice [may be] inferred but not required from the use of a dangerous weapon allowed the jury to convict of premeditated murder without finding a specific intent to kill." Docket # 1 at 3. On appeal, Smith argued that the trial judge had instructed the jury improperly by stating that, "[a]s a general rule, you're permitted to infer, but not required to infer, that a person who uses a dangerous weapon on another is acting with malice." Smith, 456 Mass. at 487; S.A. at 64-65. The SJC found that there was no error

because in the sentence to which Smith objected, "the judge was simply informing the jury that they could infer from the use of a handgun that the defendant intended to kill the victim. It was not error to instruct that one may infer an intent to kill from the use of a firearm." Smith, 456 Mass. at 488 (citing Commonwealth v. Oliveira, 445 Mass. 837, 842–843 (2006)).

This particular claim is not subject to federal habeas review. "The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Wilson v. Corcoran, --- U.S. --- (2010), 131 S.Ct. 13, 16 (quoting 28 U.S.C. § 2254(a)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id., (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Smith has not identified any way in which he asserts that this claim implicates any violation of the constitution or laws of the United States.

**Ineffective Assistance Claims**

Standard of Review - Ineffective Assistance of Counsel

To succeed on a Sixth Amendment ineffective assistance of counsel claim, a habeas petitioner "must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 689, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A failure of proof on either prong defeats an ineffective assistance of counsel claim. See Malone v. Clarke, 536 F.3d 54, 64 (1st Cir. 2008) ("[I]f it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (internal quotation marks omitted). The burden is on Smith to demonstrate both deficient performance by his counsel and prejudice by a preponderance of the evidence. See Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). The Court's review of counsel's performance under the first prong of the Strickland test is highly deferential and Smith must show that "given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006). Counsel's tactical decisions cannot generally form a basis for an ineffective assistance of counsel claim. Murchu v. United States, 926 F.2d 50, 58(1st Cir. 1991) (("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983)). The second prong of the Strickland test requires a Petitioner to demonstrate actual prejudice from the alleged mistakes of counsel. Rice v. Hall, 564 F.3d 523, 525 (1st Cir. 2009). The test applied to ineffective assistance claims in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), is the "functional equivalent" of Strickland for purposes of proceeding with a § 2254(d)(1) determination. Mello v. DiPaulo, 295 F.3d 137, 144 (1st Cir. 2002). Of course, in order to prevail, Smith must not only prevail under the Strickland analysis, but also establish that the challenged state court decision was "contrary to" or an "unreasonable application" of Strickland.

      Failure to Call Witnesses

      In his Petition, Smith alleges that his trial counsel was ineffective in failing to call witnesses Jamilson Teixeira and Skip Johnson. Docket # 1. Smith has not elaborated in his

memorandum in support of his Petition concerning the manner in which testimony from these two witnesses would have been helpful to him, or how his trial counsel's failure to call the witnesses therefore constituted ineffective assistance.  Docket # 15.

### Witness Teixeira

The SJC recited with respect to Teixeira that, "[Smith] contends that Teixeira would have provided significant exculpatory evidence in his behalf. [Smith] submitted an affidavit from Teixeira with his motion for a new trial.  Teixeira averred that he did not see the defendant in the area of the shooting, but saw the defendant at that time "smoking weed" with two other people in an apartment in the housing project."  Smith, 456 Mass. at 482; See also S.A. at 53-54.  The SJC concluded that the fact that Teixeira did not see Smith in the area of the shooting did not mean that Smith did not shoot the victim.  Id.  The SJC also noted that Teixeira's affirmation was contradicted by Smith's own statements (made during prison interviews) that he had been present when the victim was shot, but had not participated in the shooting.  Id.  The SJC concluded that the contradictory statements would have provided substantial grist for cross-examination of Teixeira had he testified, and that Smith's trial counsel had certainly considered calling Teixeira, since he had been the subject of a Writ of Habeas Corpus to a county house of corrections for the purpose of securing his attendance at Smith's trial.  Id.  The Court finally concluded that, "[t]he decision did not constitute ineffective assistance; that the defendant was convicted does not mean that the strategy was unreasonable."  Id.

The decision not to call Teixeira is a tactical decision of a type which, as noted supra, cannot ordinarily form the basis of an ineffective assistance claim.  Counsel's tactical decisions cannot generally form a basis for an ineffective assistance of counsel claim. See supra at 7

(citing Murchu, 926 F.2d at 58) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983)).  The SJC's conclusions were not contrary, to or an unreasonable application of, controlling Supreme Court precedent          .

Witness Johnson

With respect to potential witness Skip Johnson, the SJC recited that Johnson had approached Smith's trial counsel on a Friday morning after the evidence had closed (but before final arguments) to state that the two primary Commonwealth witnesses had been lying and that the Commonwealth had paid for them to stay at a motel and had given them money to buy crack cocaine.  Smith, 456 Mass. at 482.  Johnson also stated that the two witnesses told Johnson that they were telling the police "whatever they wanted to hear" to get these benefits.  Id.

After the prosecutor explained that he was aware that the two men had been put up in a hotel, but stated that such assistance was provided to ensure the witnesses' safety, Smith's trial counsel requested that he be permitted to investigate the matter during the upcoming weekend, with the result that the case was continued until the following Monday.  Id. at 482-83.  At that time, Smith's counsel told the Court that his investigation had revealed that, approximately one month after the shooting, the Commonwealth had paid for DeJesus and Barros to live in a hotel for six nights, had provided them with "minimum amounts of money for food and so on," and had also helped Barros get treatment at a drug treatment center.  Id. at 483.  The parties prepared a stipulation which was read to the jury before the closing arguments, explaining that the Commonwealth: had paid for both witnesses to stay at a hotel for several nights one month after the shooting; had given both witnesses money for food (one hundred dollars for

DeJesus and fifteen dollars for Barros); had given DeJesus some clothing; had given Barros five packs of cigarettes; and, had driven Barros to a detox facility.  Id. at 483-84; see also, S.A. at 57-58.

The SJC ruled that Smith had not shown that his trial counsel's decision not to call Johnson to testify was manifestly unreasonable, in light of the stipulation which presented the main information Johnson possessed.  Id. at 484.  It noted that counsel knew the contents of the stipulation, which would not change (in contrast with the uncertainties inherent in use of a live witness).  Id.  Although the stipulation did not include Johnson's statement that the witnesses had said that they were telling the police "whatever they wanted to hear," the SJC noted that Smith's counsel did not repeat the statement in apprising the Court of the outcome of his investigation, and that it was not raised with respect to Smith's motion for a new trial, nor in any affidavit from Johnson affirming that he was prepared to testify to that effect.  Id.  "Trial counsel was well aware of Johnson's statement.  His absence of reference to it after his weekend investigation suggests that Johnson might have recanted the accusation. In any event, it was not an unreasonable strategic decision to rely on the stipulation rather than calling Johnson as a witness. Id.

The decision not to call Johnson, as was the case with Teixeira, is a tactical decision of the type which is not ordinarily ineffective assistance of counsel.  Accordingly, the SJC's conclusions were not contrary, to or an unreasonable application of, controlling Supreme Court precedent.

Failure to Cross Examine DeJesus

In his Petition, Smith also alleges that his trial counsel was ineffective in failing to cross examine witness Michael DeJesus.  Docket # 1 at 2.  Before the SJC, Smith argued that his trial counsel was ineffective in for failing to cross-examine DeJesus with respect to the fact that he initially denied to the police that he had witnessed anything on the night of the murder.  Id. at 484-5; S.A. at 55-57.  The SJC found that the decision regarding whether to impeach a witness was a tactical one which was not "manifestly unreasonable."  Smith, 456 Mass. at 485 (citing Commonwealth v. Hudson, 446 Mass. 709, 715 (2006) (quoting Commonwealth v. Bart B., 424 Mass. 911, 916 (1997)) ("[i]n general, failure to impeach a witness does not prejudice the defendant or constitute ineffective assistance"))).  It also found that it was purely speculative to conclude that a different approach to impeachment would likely have affected the jury's conclusion.  Id. at 485 (citing Commonwealth v. Fisher, 433 Mass. 340, 357 (2001).

The SJC noted that defense counsel elicited that DeJesus had originally told the police that he had seen nothing on the night of the shooting through cross examination of the next following witness, Trooper Ann Marie Robertson.  Id. at 485.  Trial counsel, it concluded, may have decided that Trooper Robertson "would be a more reliable witness through whom to impeach DeJesus than DeJesus himself," especially because DeJesus had been a friend of the victim and was testifying under a grant of immunity.  Id.

The decision not to cross examine DeJesus is a tactical decision of the type which is not ordinarily ineffective assistance of counsel.  The SJC's conclusions were not contrary, to or an unreasonable application of, controlling Supreme Court precedent.

Failure to Develop A Mistaken Identity Defense

In his Petition, Smith also alleges that his trial counsel was ineffective in that he failed to present a defense of mistaken identity. Docket # 1 at 2. See also, S.A. at 67-68. The SJC found that trial counsel did attempt to develop a mistaken identity defense through cross examination of witnesses. Smith, 456 Mass. at 489. Smith does not elaborate on this claim before this Court. See, supra at 1. The Court can discern no basis for relief in this claim.

Failure to Object To Prosecutor's Leading Questions

In his Petition, Smith alleged that his trial counsel was ineffective because he "agreed to allow [the] prosecutor to use leading questions. Docket # 1 at 2. Before the SJC, he argued that his trial counsel should have objected to the prosecutor's use of leading questions in the direct examination of Trooper Robertson. Smith, 456 Mass. at 48; S.A. at 59-60. The SJC found it to be clear from sidebar conferences that the use of leading questions arose from "a considered decision agreed to by both parties to keep from the jury any evidence that the defendant was incarcerated when he was interviewed by Trooper Robertson." Id. It found that it was not "manifestly unreasonable" to avoid testimony that Smith was in custody on other charges and that there was no indication that the use of leading questions elicited testimony that would not have been otherwise forthcoming. Id. Thus, the SJC's conclusions were not contrary, to or an unreasonable application of, controlling Supreme Court precedent

Because the Court discerns no error with respect to any of Smith's individual assertions of ineffective assistance of trial counsel, the cumulative effect of the alleged errors also does not provide a basis for relief.

III.    CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY the Petitioner's Petition for Writ of Habeas Corpus (Docket # 1).[1]

/s/ Leo T. Sorokin
Chief United States Magistrate Judge

---

[1] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).